

JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JORGE RODRIGUEZ,                    )    Case No. CV 15-0016 FMO (AJWx)
                                    )
              Plaintiff,            )
                                    )
       v.                           )
                                    )    **ORDER REMANDING ACTION**
SCRIPPS MEDIA, INC. d/b/a VENTURA   )
COUNTY STAR,                        )
                                    )
              Defendant.            )
_____)

       On November 12, 2014, Jorge Rodriguez ("plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles against Scripps Media, Inc. ("defendant")[1]; Does 1 through 10, business entities with unknown names; Does 11 through 20, individuals; and Does 21 through 30, inclusive.  (See NOR at ¶¶ 3-5; Complaint at ¶¶ 1 & 9-10).  The Complaint arises from plaintiff's employment with defendant from January 11, 2012, until August 21, 2014.  (See Complaint at ¶¶ 20-21).  On January 2, 2015, defendant removed the action on diversity jurisdiction grounds pursuant to 28 U.S.C. §§ 1332 and 1441.  (See NOR at ¶ 1).

       Having reviewed the pleadings, the court hereby remands this action to state court for lack

_____

       [1]  Initially, plaintiff erroneously sued Ventura County Star, an unknown entity, and Scripps Media, Inc. He subsequently amended the Complaint to identify Scripps Media, Inc. d/b/a Ventura County Star as the defendant.  (See Notice of Removal ("NOR") at ¶ 5; id., Exhibit ("Exh.") A (Complaint and state court filings), Complaint at ¶¶ 8-9 & Dec. 18, 2014, Amendment to Complaint).

of subject matter jurisdiction.  See 28 U.S.C. § 1447(c);[2] Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction."); Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) ("Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal."); Washington v. United Parcel Serv., Inc., 2009 WL 1519894, *1 (C.D. Cal. 2009) (a district court may remand an action where the court finds that it lacks subject matter jurisdiction either by motion or sua sponte).

A removing defendant bears the burden of establishing that removal is proper.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.") (internal quotation marks omitted).  Moreover, if there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court.  See id. ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Here, the court's review of the Notice of Removal and the Complaint makes clear that this court lacks diversity jurisdiction over the instant matter.  In other words, plaintiff could not have originally brought this action in federal court, in that plaintiff does not competently allege facts supplying diversity jurisdiction, and therefore removal was improper.  See 28 U.S.C. §§ 1441(a);[3] Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987) ("Only state-court

---

[2] Title 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[3] Title 28 U.S.C. § 1441(a) provides that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

1  actions that originally could have been filed in federal court may be removed to federal court by

2  the defendant.") (footnote omitted).

3       There is no basis for diversity jurisdiction because the amount in controversy does not

4  appear to exceed the diversity jurisdiction threshold of $75,000.  <u>See</u> 28 U.S.C. § 1332.[4]  As an

5  initial matter, the amount of damages plaintiff seeks cannot be determined from the Complaint as

6  it does not set forth a specific amount.  (<u>See</u>, <u>generally</u>, Complaint at 15, Prayer).  Defendant

7  bears the burden of proving by a preponderance of the evidence that the amount in controversy

8  meets the jurisdictional threshold, <u>see</u> <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir.

9  2004); <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir. 2003) (<u>per</u>

10 <u>curiam</u>), and for the reasons set forth below, it has failed to do so.

11 I.    OVERTIME CLAIM.

12      Plaintiff alleges that defendant: "failed and refused to properly calculate overtime

13 compensation"; "routinely and systematically failed to properly record accurate time records"; and

14 "routinely and systematically failed to pay plaintiff for the premium pay for all of plaintiff's overtime

15 hours[.]" (<u>See</u> Complaint at ¶¶ 33-36).  Defendant asserts that plaintiff's claim for overtime wages

16 owed under California Labor Code § 1194(a) amounts to $19,570.40.  (<u>See</u> NOR at ¶ 15(a)).  To

17 arrive at this figure, defendant estimated plaintiff's hourly pay rate to be $19.19 based on his

18 earnings of $104,396.30 over 136 weeks at 40 hours per week ($104,396.30 / 136 / 40 = $19.19),

19 (<u>see</u> Declaration of Justine Han [Director of Human Resources for Scripps Media Inc.] in Support

20 of Notice of Removal ("Han Decl.") at ¶ 4), and assumed that plaintiff worked one hour in excess

21 of eight hours per work day, <u>i.e.</u>, five hours of overtime per week, at one and one-half (1.5) times

22 his regular pay rate, for all 136 weeks plaintiff worked for defendant (($19.19 x 1.5) x 5 x 136).

23 (<u>See</u> NOR at ¶ 15(a)).

24      Defendant's assumptions are unreasonable as there no basis in the Complaint or

25 elsewhere in the record to support those assumptions.  (<u>See</u>, <u>generally</u>, Complaint, NOR & Han

26 _____

27     [4]  In relevant part, 28 U.S.C. § 1332(a) provides that "district courts shall have original

28 jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

1   Decl.).  For example, defendant's assumption with respect to plaintiff's hourly rate (<u>i.e.</u>, $19.19 per

2   hour) appears inflated because plaintiff alleges that "at all relevant times herein, [plaintiff] was

3   entitled to an hourly pay rate of approximately $17.00-$18.00 per hour."  (<u>See</u> Complaint at ¶ 26).

4   Also, plaintiff has not pled with any specificity when or how often he was not paid for all hours

5   worked.  (<u>See</u>, <u>generally</u>, Complaint at ¶¶ 32-44).  Defendant's speculation that plaintiff worked

6   one hour in excess of eight hours each work day throughout his tenure is insufficient.  <u>See</u>

7   <u>Jimenez v. Menzies Aviation, Inc.</u>, 2013 WL 1411228, *3 (N.D. Cal. 2013) ("the Court cannot credit

8   Defendants' speculative damages estimate" where they "failed to provide evidence supporting

9   their assertion" that plaintiff was entitled to one hour of overtime per day, five days a week); <u>Willis</u>

10   <u>v. Xerox Bus. Servs., LLC</u>, 2013 WL 6053831, *5 (E.D. Cal. 2013) ("Defendants have not

11   explained why it is proper to assume Plaintiff seeks 15 hours a week in overtime[.] . . . [T]his is

12   insufficient.").  Under the circumstances, the court finds defendant has failed to show by a

13   preponderance of the evidence the amount in question with respect to plaintiff's overtime claim.

14   Without more, the court is unwilling to include plaintiff's damages for his overtime claim in the

15   amount in controversy.

16   II.     WAITING TIME PENALTY.

17       Plaintiff alleges that "[u]pon termination of [his] employment relationship, defendant[] . . .

18   willfully failed and refused to timely pay to plaintiff, pursuant to [California] Labor Code §§ 201(a)

19   and 202(a), . . . all wages earned[.]"  (<u>See</u> Complaint at ¶ 75).  He alleges that he is entitled, under

20   California Labor Code § 203, to "recover waiting time penalties, calculated as a continuance of

21   plaintiff's wages from the due date of the wage at the same rate until paid or until an action

22   therefore is commenced, up to and including 30 days."  (<u>Id.</u> at ¶ 79).

23       In relevant part, California Labor Code § 203(a) provides:

24         If an employer willfully fails to pay, without abatement or reduction, in

25         accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any

26         wages of an employee who is discharged or who quits, the wages of the

27         employee shall continue as a penalty from the due date thereof at the same

28         rate until paid or until an action therefor is commenced; but the wages shall

1    not continue for more than 30 days.

2       Defendant argues plaintiff is entitled to $4,605.60 in penalties under § 203, <u>i.e.</u>, "full waiting

3  time penalties of 30 days' pay[,]" (<u>i.e.</u>, $19.19 x 8 x 30).  (<u>See</u> NOR at ¶ 19(a)).  Defendant does

4  not supply the basis for its assumption that plaintiff is entitled to the maximum 30-day penalty,

5  (<u>see</u>, <u>generally</u>, <u>id.</u> at ¶ 19(a) & Han Decl.), and the Complaint does not support this assumption.

6  (<u>See</u>, <u>generally</u>, Complaint at ¶¶ 74-80).  Defendant has not shown by a preponderance of the

7  evidence the amount placed in controversy relating to plaintiff's waiting time claim.  <u>See</u> <u>Garibay</u>

8  <u>v. Archstone Communities LLC</u>, 539 F.App'x 763, 764 (9th Cir. 2013) (district court properly found

9  defendant had not met its burden to prove by preponderance of the evidence plaintiffs' waiting

10 time penalties where it "assume[d] that each employee would be entitled to the maximum statutory

11 penalty, but provide[d] no evidence supporting the assertion."); <u>Letuligasenoa v. Int'l Paper Co.</u>,

12 2014 WL 2115246, *8 (N.D. Cal. 2014) ("Defendants assume that each employee would be able

13 to recover the maximum thirty days of penalties. Defendants have pointed to no statements by

14 Plaintiff nor evidence in their own possession to support these assumptions.").

15 III.  'CLAIMS' FOR MEAL AND REST PERIODS.

16      Plaintiff does not assert claims for defendant's failure to provide meal and rest periods.

17 (<u>See</u>, <u>generally</u>, Complaint at ¶¶ 31-91).  Defendant nevertheless argues that plaintiff does assert

18 these claims because: (1) plaintiff incorporates by reference his letter to the California Labor and

19 Workforce Development Agency ("LWDA"), (<u>see</u> NOR at ¶ 20; Complaint at ¶ 2), which alleged

20 that he was not permitted to take meal and rest breaks and was not paid premium pay as required

21 by California Labor Code §§ 226.7 and 512, (<u>see</u> Complaint, Exh. A, Oct. 8, 2014, letter from

22 plaintiff's counsel to the LWDA ("LWDA letter") at 2); and (2) the Complaint seeks "[d]amages for

23 meal premiums not paid to plaintiffs [sic] in an amount to be determined at trial[.]" (<u>See</u> NOR at

24 ¶ 20; Complaint at 15, Prayer).

25      Rule 8(a) of the Federal Rules of Civil Procedure[5] states that "[a] pleading that states a

26 claim for relief must contain . . . a short and plain statement of the claim showing that the pleader

27

28      [5] Unless otherwise noted, references to "Rule" are to the Federal Rules of Civil Procedure.

1   is entitled to relief."   A claim is the "aggregate of operative facts which give rise to a right
2   enforceable in the courts."  Bautista v. Los Angeles Cnty., 216 F.3d 837, 840 (9th Cir. 2000).  "To
3   comply with Rule 8 each plaintiff must plead a short and plain statement of the elements of his or
4   her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the
5   prima facie case[.]"  Id.  Pursuant to Rule 10(b) "[a] party must state its claims or defenses in
6   numbered paragraphs[.]"   Under Rule 10(b), each claim must be "stated in a separate count
7   because a separation facilitates the clear presentation of the matters set forth."  Bautista, 216 F.3d
8   at 840.

9        Plaintiff plainly does not assert any claims for rest and meal break violations in compliance
10   with Rules 8(a) and 10(b).  (See, generally, Complaint).  Although Rule 10(c) provides that "[a]
11   copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all
12   purposes[,]" the court is not aware of any authority – and defendant has not provided any, (see,
13   generally, NOR at ¶¶ 20-21) – that district courts must impute claims that were not set forth in the
14   pleadings.  Given that any doubt regarding the existence of subject matter jurisdiction must be
15   resolved in favor of remanding the action to state court, see Gaus, 980 F.2d at 566, the court is
16   not persuaded that it should consider the value of claims that are not set forth in the operative
17   complaint.

18        Even assuming, arguendo, that plaintiff has properly asserted claims for meal and rest
19   period violations, defendant's estimate that each claim puts $13,049.20 in controversy, (see NOR
20   at ¶¶ 20-21), is unsupported by any factual allegation or other evidence.  Defendant assumes
21   without any basis that the alleged violations occurred daily, i.e., plaintiff was deprived a meal
22   period and a rest period every work day for 136 weeks.  Defendant's speculation is unreasonable
23   and insufficient to carry its burden.  See Garibay, 539 F.App'x at 764 (burden not met where
24   defendant "failed to provide any evidence regarding why the assumption that each employee
25   missed two rest periods per week was more appropriate than one missed rest period per paycheck
26   or one missed rest period per month."); Roth v. Comerica Bank, 799 F.Supp.2d 1107, 1120 (C.D.
27   Cal. 2010) (finding "the suggestion that each class member missed one to three meal or rest
28   periods per week . . . entirely unsupported in the record."); Letuligasenoa, 2014 WL 2115246, at

1   *5-6 (finding that the assumption that every class member was denied a meal break and a rest

2   break every single work day was speculative).

3   IV.   PAGA PENALTIES.

4          Plaintiff alleges that defendant committed numerous violations of the California Labor Code

5   entitling him to penalties under the Private Attorney General Act of 2004 ("PAGA"), Cal. Labor

6   Code §§ 2698, et seq.  (See Complaint).  In relevant part, PAGA states:

7                Notwithstanding any other provision of law, any provision of this code that

8                provides for a civil penalty to be assessed and collected by the Labor and

9                Workforce Development Agency or any of its departments, divisions,

10               commissions, boards, agencies, or employees, for a violation of this code,

11               may, as an alternative, be recovered through a civil action brought by an

12               aggrieved employee on behalf of himself or herself and other current or

13               former employees pursuant to the procedures specified in Section 2699.3.

14  Cal. Labor Code § 2699(a).  PAGA further provides that "[f]or all provisions of this code except

15  those for which a civil penalty is specifically provided," the aggrieved employee may seek civil

16  penalties of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial

17  violation and two hundred dollars ($200) for each aggrieved employee per pay period for each

18  subsequent violation" against an employer who employs more than one employee.  Id. at §

19  2699(f).

20         Here, plaintiff seeks penalties for: (1) overtime violations, Cal. Labor Code § 558, (see

21  Complaint at ¶¶ 40-41 & 43-44); (2) failure to maintain records, Cal. Labor Code §§ 1174(c)-(d)

22  & 1174.5, (see id. at ¶¶ 46, 48 & 52); (3) failure to provide accurate itemized statements, Cal.

23  Labor Code §§ 226(a), 226(e)(1) & 226.3, (see id. at ¶¶ 57, 59-60 & 63); (4) failure to pay wages

24  on regularly established paydays, Cal. Labor Code §§ 204 & 210, (see id. at ¶¶ 68-69 & 72); and

25  (5) failure to pay all wages at discharge.  (See id. at ¶¶ 79-80).

26         Defendant estimates that plaintiff seeks penalties of at least $36,150.  (See NOR at ¶ 15(b)

27  ($2,250 penalty for overtime claim recoverable through PAGA); id. at ¶ 16 ($500 penalty for failure

28  to maintain records in violation of Cal. Labor Code § 1174.5); id. at ¶ 17(a) ($2,050 penalty for

1  failure to maintain accurate itemized statements); id. at ¶ 17(b) ($4,500 PAGA penalty for § 226(e)

2  violation); id. at ¶ 17(c) ($22,250 civil penalty, recoverable through PAGA); id. at ¶ 18 ($4,500 for

3  failure to pay wages on regular paydays, recoverable through PAGA); id. at ¶ 19 ($100 PAGA

4  penalty for waiting time claim)).  Its estimate is subject to a number of serious flaws.

5       First, defendant assumes that the total PAGA recovery should be considered in determining

6  the amount in controversy, (see NOR at ¶¶ 15(b) & 16-19), despite the fact that the statute

7  provides that 75 percent of the recovery must go to the Labor and Workforce Development

8  Agency ("LWDA"), leaving only 25 percent for "aggrieved employees."  See Cal. Labor Code §

9  2699(i) ("[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75

10 percent to the Labor and Workforce Development Agency for enforcement of labor laws and

11 education of employers and employees about their rights and responsibilities under this code, to

12 be continuously appropriated to supplement and not supplant the funding to the agency for those

13 purposes; and 25 percent to the aggrieved employees."); see Pulera v. F & B, Inc., 2008 WL

14 3863489, *4 (E.D. Cal. 2008) ("The amounts recoverable by Plaintiff based on his PAGA claims

15 are separate and distinct from the amounts recoverable by the State of California via the LWDA,

16 and therefore these amounts may not be aggregated."); Willis, 2013 WL 6053831 at *9 ("The 75

17 [percent] awarded to the state is not considered to be an amount in controversy for jurisdictional

18 purposes.") (internal citation omitted); see also Urbino v. Orkin Servs. of California, Inc., 726 F.3d

19 1118, 1122-23 (9th Cir. 2013) (in individual PAGA action removed on diversity grounds, court

20 reversed denial of motion to remand, and held that "[t]o the extent Plaintiff can – and does – assert

21 anything but his individual interest, . . . we are unpersuaded that such a suit, the primary benefit

22 of which will inure to the state, satisfies the requirements of federal diversity jurisdiction."); but see

23 Patel v. Nike Retail Servs., Inc., 2014 WL 3611096, *13 (N.D. Cal. 2014) ("the entire amount of

24 PAGA penalties attributable to [plaintiff's] claims count towards the amount in controversy.").[6]  The

25

26  _____

27  [6] The court acknowledges the split in authority but ultimately finds the reasoning of Pulera and
   Willis more persuasive.  See Willis, 2013 WL 6053831 at *8 (finding that Urbino laid to rest the
28 question in holding "that the interest of the LWDA cannot be considered in determining whether
   a plaintiff has demonstrated that the amount in controversy exceeds $75,000.").

1  court is persuaded that the portion of any PAGA penalties plaintiff may collect is "separate and

2  distinct" from the portion recoverable by the LWDA, and thus is not properly considered part of the

3  amount in controversy .  See Pulera, 2008 WL 3863489 at *4.  Thus, even assuming defendant

4  has correctly tallied plaintiff's PAGA penalties, the penalties place in controversy only 25 percent

5  of defendant's figure.

6         Second, defendant assumes a 100 percent violation rate for all PAGA and statutory

7  penalties during the applicable statute of limitations period.  (See, e.g., NOR at ¶ 15(b)) ($2,250

8  in penalties for overtime violations based on initial violation ($50) and subsequent violations ($100)

9  for 22 pay periods during one year preceding plaintiff's LWDA letter); (id. at ¶ 17(a)) ($2,050 in

10  penalties for failure to provide accurate itemized records based on initial violation ($50) and

11  subsequent violations ($100) for 20 pay periods during one year preceding plaintiff filing

12  Complaint); (id. at ¶ 17(b)) ($4,500 in penalties for failure to provide accurate itemized records

13  based on initial violation ($100) and subsequent violations ($200) for 22 pay periods during one

14  year preceding plaintiff's LWDA letter); (id. at ¶ 17(c)) ($22,500 in penalties for failure to provide

15  accurate itemized records based on initial violation ($250) and subsequent violations ($1000) for

16  22 pay periods during one year preceding plaintiff's LWDA letter); (id. at ¶ 18) ($4,500 in penalties

17  for failure to pay wages on regularly established paydays based on initial violation ($100) and

18  subsequent violations ($200) for 22 pay periods during one year preceding plaintiff's LWDA letter).

19  Nowhere does defendant support its 100 percent violation rate assumption with citation to the

20  Complaint or other evidence.  (See, generally, NOR at ¶¶ 15-19).  "[C]ourts disavow the use of a

21  100 [percent] violation rate when calculating the amount in controversy absent evidentiary

22  support."  Moreno v. Ignite Restaurant Group, 2014 WL 1154063, *5 (N.D. Cal. 2014); see

23  Garibay, 539 F.App'x at 764 (defendant did not satisfy preponderance of the evidence standard

24  where it assumed, without evidence, that class members would be entitled to recover penalties

25  for violations of employer's obligation to keep accurate itemized wage statements for every pay

26  period); Letuligasenoa, 2014 WL 2115246 at *5-6 (rejecting application of 100 percent violation

27  rate where unsupported by the record).

28         Third, defendant's estimate is problematic because it fails to supply a basis for its

1  assumption that it will be liable for 'subsequent' violations of the Labor Code.  In order for plaintiff

2  to recover for 'subsequent' violations, he must show that defendant was on notice about the

3  violations.  See Amaral v. Cintas Corp. No. 2, 163 Cal.App.4th 1157, 1209 (2008) ("Until the

4  employer has been notified that it is violating a Labor Code provision (whether or not the

5  Commissioner or court chooses to impose penalties), the employer cannot be presumed to be

6  aware that its continuing underpayment of employees is a 'violation' subject to penalties. However,

7  after the employer has learned its conduct violates the Labor Code, the employer is on notice that

8  any future violations will be punished just the same as violations that are willful or intentional – i.e.,

9  they will be punished at twice the rate of penalties that could have been imposed or that were

10  imposed for the initial violation."); Jimenez, 2013 WL 1411228 at *4 ("Courts have held that

11  'subsequent' violations in the PAGA context means not just later in time but following notice to the

12  employer that it is in violation of the Labor Code") (collecting cases).  Defendant has not provided

13  any evidence that it was on notice about the violations plaintiff alleges.  (See, generally, NOR).

14  Moreover, the Complaint discloses no facts suggesting defendant was notified of any Labor Code

15  violations before plaintiff's separation from his employment there.  (See, generally, Complaint);

16  (see also id. at ¶¶ 21 & 29) (plaintiff separated from employment on August 21, 2014, and sent

17  defendant letter requesting to inspect employment records and personnel file on October 7, 2014).

18  Thus, defendant has not met its burden as to any 'subsequent' violations of the Labor Code.  See

19  Willis, 2013 WL 6053831 at *7 (burden not met where "Plaintiff did not allege a factual basis for

20  the claim that subsequent violation-penalties may be imposed[,]" and "Defendant does not proffer

21  any reason to believe that subsequent violation-penalties may be imposed.").

22          Finally, defendant suggests that plaintiff can seek two distinct penalties for its failure to

23  provide accurate itemized statements in violation of California Labor Code § 226(a): (1) $2,050

24  pursuant to § 226(e) and (2) $4,500 pursuant to the PAGA § 2699(f)(2).  (See NOR at ¶¶ 17(a)-

25  (b)).  Section 226(e) provides, in relevant part, that "[a]n employee suffering injury as a result of

26  a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to

27  recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a

28  violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent

pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)[.]" Cal. Labor Code § 226(e). The PAGA establishes a penalty scheme "[f]or all provisions of this code <u>except</u> those for which a civil penalty is specifically provided[.]" Cal. Labor Code § 2699(f) (emphasis added). Thus, there is no basis for plaintiff to recover penalties under the PAGA § 2699(f)(2) in addition to the penalties provided for in § 226(e) for a violation of § 226(a). <u>See</u> <u>Li v. A Perfect Day Franchise, Inc.</u>, 2012 WL 2236752, *17 (N.D. Cal. 2012) ("granting PAGA penalties for failure to provide accurate wage statements [in addition to penalties under § 226] would be duplicative recovery. Plaintiffs have provided no authority, and the Court is aware of no authority, that would permit double recovery of essentially the same penalties. Therefore, the Court declines to award PAGA penalties for the failure to provide accurate wage statements as this penalty has already been awarded."). Defendant double-counted its penalty liability for any violation(s) of California Labor Code § 226(a).

In short, defendant greatly overstated its potential liability for penalties under the PAGA. At best, based on the Complaint and Notice of Removal, the court estimates that plaintiff's claims for penalties place $262.50 in controversy, <u>i.e.</u>, 25 percent of: $50 for defendant's initial violation of California Labor Code § 558, (<u>see</u> NOR at ¶ 15(b)), $500 for defendant's violation of California Labor Code § 1174.5, (<u>id.</u> at ¶ 16), $50 for defendant's initial violation of California Labor Code § 226(a), (<u>id.</u> at ¶ 17(a)), $250 for defendant's initial violation of California Labor Code § 226.3, (<u>id.</u> at ¶ 17(c)), $100 for defendant's initial violation of California Labor Code §§ 204 and 210, (<u>id.</u> at ¶ 18), and $100 for defendant's violation of California Labor Code § 203 (0.25 x (50 + 500 + 50 + 250 + 100 + 100)). (<u>Id.</u> at ¶ 19(b)) .

V.    ATTORNEY'S FEES.

Plaintiff seeks attorney's fees under Cal. Labor Code § 1194(a). (<u>See</u> Complaint at ¶ 39). "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998). Defendant asserts that "it is reasonable to estimate attorneys' fees of at least $21,606.10[,]" <u>i.e.</u>, roughly 25 percent of the estimated award. (<u>See</u> NOR at ¶ 23).

However, "courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case." Hernandez v. Towne Park, Ltd., 2012 WL 2373372, *19 (C.D. Cal. 2012) (collecting cases); see Reames v. AB Car Rental Servs., Inc., 899 F.Supp.2d 1012, 1018 (D. Or. 2012) ("The Ninth Circuit has not yet expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue."); Walker v. CorePower Yoga, LLC, 2013 WL 2338675, *6 (S.D. Cal. 2013) ("the Ninth Circuit has not decided, and district courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the cases.") (internal quotation marks omitted). The court is persuaded that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal." Dukes v. Twin City Fire Ins. Co., 2010 WL 94109, *2 (D. Ariz. 2010) (citing Abrego v. Dow Chem. Co., 443 F.3d 676, 690 (9th Cir. 2006)). "Future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal." Id.; Palomino v. Safeway Ins. Co., 2011 WL 3439130, *2 (D. Ariz. 2011) ("This court agrees with the Seventh Circuit and concludes that the better view is that attorneys' fees incurred after the date of removal are not properly included in calculating the jurisdictional amount.").

Here, defendant provides no evidence of the amount of attorney's fees that were incurred at the time of removal. (See, generally, NOR). Therefore, defendant has not shown by a preponderance of the evidence that the inclusion of attorney's fees would cause the amount in controversy to reach the $75,000 threshold. See Walton v. AT&T Mobility, 2011 WL 2784290, *2 (C.D. Cal. 2011) (Declining to reach the issue of whether future attorney's fees could be considered in the amount in controversy because the defendant "did not provide any factual basis for determining how much attorney's fees have been incurred thus far and will be incurred in the future[, and] [b]ald assertions are simply not enough."); Banuelos v. Colonial Life & Acc. Ins. Co.,

1  2011 WL 6106518, *1 (C.D. Cal. 2011) ("Defendant provides no factual basis for determining the

2  amount of fees incurred thus far[.] . . .  Thus, Defendant's inclusion of Plaintiff's attorney's fees is

3  speculative, unsupported and cannot be included in determining the amount in controversy."); MIC

4  Philberts Investments v. Am. Cas. Co. of Reading , Pa., 2012 WL 2118239, *6 (E.D. Cal. 2012).

5  **CONCLUSION**

6       In sum, given that any doubt regarding the existence of subject matter jurisdiction must be

7  resolved in favor of remanding the action to state court, see Gaus, 980 F.2d at 566, the court is

8  not persuaded, under the circumstances here, that defendant has met its burden of proving by a

9  preponderance of the evidence that the amount in controversy meets the jurisdictional threshold.

10  See Matheson, 319 F.3d at 1090 ("Where it is not facially evident from the complaint that more

11  than $75,000 is in controversy, the removing party must prove, by a preponderance of the

12  evidence, that the amount in controversy meets the jurisdictional threshold.  Where doubt

13  regarding the right to removal exists, a case should be remanded to state court."); Valdez, 372

14  F.3d at 1117.  Therefore, there is no basis for diversity jurisdiction.

15       **This order is not intended for publication. Nor is it intended to be included in or**

16  **submitted to any online service such as Westlaw or Lexis.**

17       Based on the foregoing, IT IS ORDERED that:

18       1.    The above-captioned action shall be **remanded** to the Superior Court of the State

19  of California for the County of Los Angeles, 111 North Hill Stree, Los Angeles, California 90012.

20       2.    The Clerk shall send a certified copy of this Order to the state court.

21  Dated this 28th day of January, 2015.

22                           /s/

23                      Fernando M. Olguin
                   United States District Judge

24

25

26

27

28